IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 6, 2006

## NANCI I. HOLDEN v. PAUL D. HOLDEN

**Appeal from the Circuit Court for Hamilton County**
**No. 01 D 202     Jacqueline E. Schulten, Judge**

**No. E2006-00902-COA-R3-CV  - FILED MAY 31, 2007**

This is a post-divorce case.  Paul D. Holden ("Husband") filed a petition against his former spouse, Nanci I. Holden ("Wife"), seeking to modify the parties' residential parenting plan pertaining to their minor children.  Around the same time, the Department of Children's Services ("DCS") received an anonymous referral regarding the children's "safety and possible sexual abuse" at Wife's residence. The trial court subsequently appointed a guardian ad litem for the children.  The court found, as was recommended by the guardian ad litem, that Husband was entitled to more parenting time with the children.  The court also found that there was no foundation for the complaint made to DCS regarding the children.  The court ordered Husband to pay the fees of the guardian ad litem. Husband appeals that order.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Cara C. Welsh, Chattanooga, Tennessee, for the appellant, Paul D. Holden.

John M. Higgason, Jr., Chattanooga, Tennessee, for the appellee, Nanci I. Holden.

**OPINION**

I.

The parties were divorced in June 2001.  They have two minor children, Brian Joseph Holden and Emily Pearl Holden.  At the time of the divorce, Brian was seven years old and Emily was eight months old.

The judgment of divorce designated Wife as the primary residential parent.  It incorporated the residential schedules set forth in the parties' permanent parenting plan.  Husband's time with

Brian began every other Friday at 6:30 p.m. and extended to 8:00 p.m. on Saturday. Due to Emily's age, Husband's time with her was limited. It began at 10:00 a.m. on every other Saturday and lasted until 8:00 p.m. the same day. Husband was also given time with the children every Tuesday from 6:00 p.m. until 8:00 p.m. The parenting plan states that "[s]aid schedule shall be increased as age appropriate for the children upon agreement of the parties or further order of the Court." The plan also divided the children's holiday schedules between the parties.

Following the divorce, Wife and the children continued to live in Chattanooga. Husband, on the other hand, moved to Calhoun, Georgia. He currently resides there with his new wife and her two minor children. To his credit, the record reflects that Husband has not missed a child support payment since the entry of the divorce judgment.

In January 2002, the parties agreed that Husband would pick up both children every other Friday at 6:00 p.m. and return them on Sunday at 4:00 p.m. Wife agreed to this arrangement because, under the original residential schedule, Husband was forced to drive from Calhoun to Chattanooga on Friday evening to pick up Brian and then again on Saturday morning to pick up Emily. According to Husband, the parties followed the new schedule until April 2004, when Wife elected to return to the schedule mandated by the divorce judgment.

Husband filed a petition to modify the permanent parenting plan on June 3, 2004. Husband's petition included a new proposed plan, which gave him time with the children beginning at 6:00 p.m. every other Friday to Sunday at 6:00 p.m., three weeks during the summer, and various other holidays. In her answer to Husband's petition, Wife admitted that she had previously allowed Husband to have additional time with the children but stated that she had returned to the original schedule because Husband had abused his expanded time "by disrespecting [her] and cursing her in the vilest forms of language in the presence of the parties' children." Wife also filed a counter-petition in which she requested, among other things, that Husband be found in contempt and "appropriately punished for his vile and obscene language to [her] in the presence of the parties' minor children."

Sometime prior to October 2004, DCS received an anonymous referral regarding the living conditions at Wife's home. According to the DCS employee who investigated the referral, the anonymous caller indicated that the house was filthy and dangerous for the children. Wife secured the issuance of a subpoena duces tecum for the notes/report of the DCS investigator. DCS filed a motion to quash the subpoena and for a protective order to prevent the disclosure of information and materials used in its investigation. Wife responded by stating that T.C.A. § 37-1-612(h) (2005) provides that disclosure of such information was allowed "for the purpose of protecting a child or children from child abuse or neglect or child sexual abuse." *Id.* Wife denied that she was guilty of such abuse or neglect and argued that, if such conduct was being perpetrated upon the children, it was imperative that she know the specifics so she could protect the children.

The trial court held a hearing on DCS's motion. At that hearing, Husband denied making the anonymous referral to DCS. However, he "did admit in open Court that he was aware of the

referral." According to the Statement of Evidence adopted by the trial court, the court advised Husband at this hearing that "if no proof or evidence was produced to sustain the . . . referral [to DCS] that [Husband] would be responsible for the Guardian Ad Litem fees." The trial court ultimately granted DCS's motion to quash, stating that it had found "no allegations of child abuse or neglect or child sexual abuse upon which to make a determination as to the disclosure of any pending investigation by [DCS]." The court also found that the appointment of a guardian ad litem was appropriate. The court then appointed Robin Miller ("the GAL") as the children's guardian ad litem and stated that the GAL was "to assess the minor children's situation with regard to any child abuse, neglect, or child sexual abuse, including discussion with the [DCS] investigator and review of the investigator's file as provided by [s]tatute."

The GAL subsequently submitted her report and recommendations to the trial court. The report states that, though Wife's home was somewhat cluttered from remodeling projects, it was clean and had adequate play areas, sleeping areas, cooking and eating areas, and a nice yard for the children. The report also provides that the GAL spoke with the DCS investigator. The GAL noted that it was her understanding that the investigator was going to report that the complaint was unfounded.

The GAL recommended that the parties' original residential parenting plan be modified to allow Husband additional time with children. In particular, the GAL recommended that Husband have the children on the first and third weekends of every month beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on Sunday. The GAL also recommended that Husband be given three weeks of parenting time during the summer, one week at Christmas, alternate Spring Breaks, and a division of the Thanksgiving holiday that would accommodate family plans. The GAL also found that Husband's proposed schedule for other holidays was reasonable.

The trial court entered an order, which set forth the following findings and conclusions:

> The parties herein are the parents of the minor children, Brian and Emily, and they do not like each other;
>
> There appears no foundation to the complaint made to [DCS] against [Wife] and the cost of the [GAL] will therefore be assessed against [Husband].
>
> \* \* \*
>
> That many of the recommendations made by the [GAL], who performed a valuable service to the Court on behalf of the minor children, should be adopted and incorporated into the Parenting Plan. . . .

(Paragraph numbering in original omitted).

-3-

Husband filed a motion to alter or amend the trial court's order, arguing that the court had erred in ordering him to pay the fees of the GAL. Wife responded by arguing that Husband's motion should be denied because "on the date [the GAL] was appointed, [the trial judge] announced in open Court that if [Husband] could not substantiate the allegations of abuse as to the parties' children that he would be responsible for the fees of the [GAL]." The trial court denied Husband's motion. The GAL subsequently filed a motion for the payment of her fees, a motion which documented $5,750 in fees. The trial court awarded the GAL a judgment against Husband in the amount $3,500. Husband appeals this judgment against him.

II.

In this non-jury case, our standard of review is *de novo* upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). Our review of questions of law is *de novo* with no presumption of correctness attaching to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

III.

Husband's primary issue on appeal is whether or not the trial court erred by adjudging the fees of the GAL against him. He contends that the trial court should not have ordered him to pay the fees because (1) he was the "prevailing party" with respect to his petition to modify the residential parenting plan; and (2) "there were no equitable considerations present in this case which would justify disregarding the general rule [that the court should award discretionary costs to, rather than against, the "prevailing party"]." Husband asserts that the trial court ordered him to pay the GAL fees because the court believed Husband was responsible for the anonymous referral to DCS regarding the children's living conditions at Wife's home. Husband argues that this rationale violates the spirit of T.C.A. § 37-1-409 (2005) – *i.e.*, the statute that requires reports of suspected child abuse, and the identity of the reporter, to be kept confidential in order to protect the child or children and to encourage individuals to make such reports to the authorities. These arguments miss the mark in this case.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure specifically includes guardian ad litem fees in the class of allowable discretionary costs.[1] The assessment of such costs falls within

---

[1] Tenn. R. Civ. P. 54.04(2), which permits the court to award discretionary costs, provides, in pertinent part, as follows:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and

(continued...)

the reasonable discretion of the trial court, which may allocate the costs between the parties as it feels the equities require. ***Perdue v. Green Branch Min. Co.***, 837 S.W.2d 56, 60 (Tenn. 1992). In reviewing the trial court's assessment of these costs, we employ an abuse of discretion standard. ***Mass. Mut. Life Ins. Co. v. Jefferson***, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002). We cannot substitute our judgment for that of the trial court. ***Id.*** A trial court abuses its discretion when it "applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Id.***

The trial court held multiple hearings in this case. The Statement of Evidence reflects "[e]xtensive hearings on the matter were held on June 7, 2005, and on July 27, 2005." However, we have no record of the testimony of the witnesses at those hearings. While the Statement of Evidence is four pages long, it is basically a recitation of the procedural history of the case rather than a statement of the evidence. Because of the paucity of the record, we do not know what prompted the trial court's decision to burden Husband with a portion of the GAL's fees. It may well have been the statement of Husband in open court that he was "aware" of the complaint to DCS. In any event, the sparse record before us makes it impossible for us to assess the propriety of the trial court's fee decision. In the absence of the evidence presented to the trial court, we must presume that the trial court was presented with evidence to support its decision. *See **Taylor v. Allstate Ins. Co.***, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004); ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). Accordingly, we uphold the trial court's assessment of the GAL fees against Husband.

IV.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of that court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Paul D. Holden.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[1](...continued)
    necessary interpreter fees for depositions or trials, and *guardian ad litem fees*; travel
    expenses are not allowable discretionary costs. . . .

(Emphasis added).